# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **Mölnlycke Health Care AB**, a Sweden corporation | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| **Neo G USA, Inc.**, a Florida corporation | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Mölnlycke Health Care AB ("Mölnlycke" or "Plaintiff") files this complaint for patent infringement against Neo G USA, Inc. ("Neo" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et. seq.*, including specifically 35 U.S.C. § 271, based on Defendant's willful infringement of United States Patent Nos. 10,828,203 (the "'203 Patent"), 11,717,449 (the "'449 Patent") and 12,023,225 (the "'225 Patent") (collectively, the "Mölnlycke Patents").

2.      The infringing products at issue are wound pads, or wound care products or dressings (hereafter generally referred to as "wound care dressings"), for use in wound care management. Mölnlycke notified Defendant of its infringement of the '203 patent, '449 patent, and '225 patent under 35 U.S.C. § 271 in a cease and desist demand letter on December 1, 2025.

1

3.      Despite such notification of the Mölnlycke Patents and its infringement of the same, Defendant has continued to sell and offer for sale infringing products.

4.      As a result, Defendant in this case is a willful infringer of the Mölnlycke Patents.

5.      Mölnlycke brings this action seeking monetary damages, a preliminary and permanent injunction, and other such relief as set forth herein.

## THE PARTIES

6.      Plaintiff Mölnlycke is a corporation organized and existing under the laws of Sweden.  Its principal place of business is located at Entreprenörsstråket 21, SE-431 53 Mölndal, Sweden. Mölnlycke also has a sales office in Georgia and two production facilities in Maine.

7.      On information and belief, and according to the Florida Department of State Division of Corporations, Defendant Neo G USA, Inc. is an active United States corporation organized under the laws of the State of Florida, with its principal place of business at 1660 Silver Beach Road, Suite 400, Lake Park, Florida 33403. Defendant conducts business in this District and maintains a regular place of business in this District.

8.      On information and belief, Defendant does business online under the names "Neo G USA" and "Neo G" and operates a website located at www.neo-g.com. Below are screenshots from Defendant's website captured on March 16, 2026[1]:

---

[1] https://www.neo-g.com/collections/woundcare/products/silicone-multi-purpose-dressing; https://www.neo-g.com/collections/woundcare/products/silicone-postsurgical-dressing.





9.      Defendant makes, uses, imports, offers for sale and sells wound care dressings that infringe the Mölnlycke Patents, including offering and selling through a long list of third-party vendor websites.

10.     For example, in the annotated screen captures below of a search engine search for Neo G's Opti-Heal® Silicone Postsurgical Dressing, visited on March 16, 2026, many vendors offer Defendant's infringing wound care dressings for sale:

3









11.     On December 1, 2025, Mölnlycke sent a letter via email and Federal Express, addressed to the Legal Department, Neo G, 1660 Silver Beach Road, Ste. 400, Lake Park, FL 33403, informing Defendant of their infringement of Mölnlycke's '203 patent, '449 patent, and '225 patent. This letter is attached as Exhibit A.

12.     This letter attached copies of the '203 patent, '449 patent, and '225 patent, provided details about Mölnlycke's intellectual property rights and enforcement activities, and demanded that Defendant immediately cease and desist its infringement.

13.     On December 24, 2025, Defendant responded indicating that "Neo G cannot agree that the Letter's materials demonstrate infringement of the asserted patents" and refused to cease and desist its infringement. This response is attached as Exhibit B.

14.     On January 23, 2026, Mölnlycke responded to Defendant and offered two options to Defendant to avoid litigation. Option 1 required Defendant to immediately cease sales of the infringing Opti-Heal® products and destroy any remaining products along with providing proof of destruction to Mölnlycke. Option 2 proposed a sellout period for Defendant to sell off remaining products and provide sales data from the sellout period for Mölnlycke to determine a suitable cost for the sellout period. This letter is attached as Exhibit C.

15.     Despite Mölnlycke providing Defendant with notice of its infringement of the '203 patent, '449 patent, and '225 patent on December 1, 2025, and with full knowledge its infringement of the Mölnlycke Patents, Defendant has, and continues to, make, use, and import infringing wound care dressings into the United States and offer to sell and sell them online.

16.     Mölnlycke has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Mölnlycke Patents at https://www.molnlycke.us/product-support/virtual-patent-marking/.

17. For at least these reasons, and those discussed herein, Defendant's manufacture, use, importation, offers to sell, and sale of infringing wound care dressings complained of herein have been, and continue to be, willful.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

19. This Court has personal jurisdiction over Defendant in this action because Defendant resides in this District and has committed acts of infringement within the State of Florida and within this District through, for example, the sale of Neo G's Opti-Heal® Silicone Multi-Purpose Dressing and Opti-Heal® Silicone Postsurgical Dressing in this District.

20. This Court has personal jurisdiction over Defendant at least because Defendant has committed acts of direct patent infringement in Florida, including in this judicial district, and is incorporated in Florida.

21. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(b) because Defendant resides in this judicial district, and/or Defendant has committed acts of infringement and maintains a regular and established place of business in this judicial district.

## FIRST CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 10,828,203

22. Mölnlycke incorporates by reference each and every allegation contained in Paragraphs 1 through 21 as though fully set forth herein.

7

23. Mölnlycke owns all right, title, and interest in the '203 patent, which was duly and legally issued to Mölnlycke by the United States Patent and Trademark Office on November 10, 2020.

24. Attached as Exhibit D to this Complaint is a true and correct copy of the '203 patent.

25. The '203 patent relates generally to wound care dressings.

26. The '203 patent is valid and enforceable.

27. Defendant has infringed and is infringing the '203 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, wound care dressings.

28. At least the Neo G Opti-Heal® Silicone Multi Purpose Dressing satisfies each and every limitation of at least claim 1 of the '203 Patent.

29. The Neo G Opti-Heal® Silicone Multi Purpose Dressing is a wound pad as recited in Claim 1. Specifically, the Neo G Opti-Heal® Silicone Multi Purpose Dressing is:

1. A wound pad comprising fibers and being provided with at least a first and a second discrete group of incisions,
wherein each one of said discrete groups of incisions comprises at least a first and a second incision,
wherein said first and said second incision extend from a common starting point to a respective end point,
wherein the end point of said first incision is spaced from the end point of said second incision,
wherein the common starting point of said first discrete group of incisions is provided on a first side of an imaginary line extending in a machine direction of said wound pad, and
the common starting point of said second discrete group of incisions is provided on a second side of said imaginary line, and
wherein a first incision of said first discrete group of incisions and a second incision of said second discrete group of incisions each cross said imaginary line.

30. At least the Neo G Opti-Heal® Silicone Postsurgical Dressing satisfies each and every limitation of at least claim 1 of the '203 Patent.

8

31. The Neo G Opti-Heal® Silicone Postsurgical Dressing is a wound pad as recited in Claim 1. Specifically, the Neo G Opti-Heal® Silicone Postsurgical Dressing is:

> 1. A wound pad comprising fibers and being provided with at least a first and a second discrete group of incisions,
> wherein each one of said discrete groups of incisions comprises at least a first and a second incision,
> wherein said first and said second incision extend from a common starting point to a respective end point,
> wherein the end point of said first incision is spaced from the end point of said second incision,
> wherein the common starting point of said first discrete group of incisions is provided on a first side of an imaginary line extending in a machine direction of said wound pad, and
> the common starting point of said second discrete group of incisions is provided on a second side of said imaginary line, and
> wherein a first incision of said first discrete group of incisions and a second incision of said second discrete group of incisions each cross said imaginary line.

32. Under 35 U.S.C. § 284, by reason of Defendant's infringing activities, Mölnlycke has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

33. Defendant's acts complained of herein have damaged and will continue to damage Mölnlycke irreparably.

34. Mölnlycke has no adequate remedy at law for these wrongs and injuries.

35. Mölnlycke is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendant's and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '203 patent.

36. Defendant is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any wound care dressing claimed in the '203 patent, and Defendant's conduct is, in every instance, without Mölnlycke's consent.

37. On information and belief, Defendant's infringement of the '203 patent has been, and continues to be, willful since at least as early as December 1, 2025, when it had actual notice of the '203 patent and its infringement of the '203 patent.

## SECOND CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 11,717,449

38. Mölnlycke incorporates by reference each and every allegation contained in Paragraphs 1 through 37 as though fully set forth herein.

39. Mölnlycke owns all right, title, and interest in the '449 patent, which was duly and legally issued to Mölnlycke by the United States Patent and Trademark Office on August 8, 2023.

40. Attached as Exhibit E to this Complaint is a true and correct copy of the '449 patent.

41. The '449 patent relates generally to wound care dressings.

42. The '449 patent is valid and enforceable.

43. Defendant has infringed and is infringing the '449 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, wound care dressings.

44. At least the Neo G Opti-Heal® Silicone Multi Purpose Dressing satisfies each and every limitation of at least claim 15 of the '449 patent.

45. The Neo G Opti-Heal® Silicone Multi Purpose Dressing is a wound pad as recited in Claim 15. Specifically, the Neo G Opti-Heal® Silicone Multi Purpose Dressing is:

> 15. A wound pad comprising fibers and being provided with at least a first and a second discrete group of incisions,
> wherein each of the first and second discrete groups of incisions comprises at least a first and a second incision extending from common starting point to a respective end point,

wherein the respective end point of the first incision is spaced from the respective end point of the second incision,

wherein the first discrete group of incisions is a part of a plurality of discrete group of incisions arranged in a first row along a machine direction of the wound pad,

wherein the second discrete group of incisions is a part of a plurality of discrete group of incisions arranged in a second row along a machine direction of the wound pad,

wherein the plurality of discrete group of incisions arranged in the first row is offset from the plurality of discrete group of incisions arranged in the second row in both the machine direction and a cross direction of the wound pad.

46. At least the Neo G Opti-Heal® Silicone Postsurgical Dressing satisfies each and every limitation of at least claim 15 of the '449 patent.

47. The Neo G Opti-Heal® Silicone Postsurgical Dressing is a wound pad as recited in Claim 15. Specifically, the Neo G Opti-Heal® Silicone Postsurgical Dressing is:

15. A wound pad comprising fibers and being provided with at least a first and a second discrete group of incisions,

wherein each of the first and second discrete groups of incisions comprises at least a first and a second incision extending from common starting point to a respective end point,

wherein the respective end point of the first incision is spaced from the respective end point of the second incision,

wherein the first discrete group of incisions is a part of a plurality of discrete group of incisions arranged in a first row along a machine direction of the wound pad,

wherein the second discrete group of incisions is a part of a plurality of discrete group of incisions arranged in a second row along a machine direction of the wound pad,

wherein the plurality of discrete group of incisions arranged in the first row is offset from the plurality of discrete group of incisions arranged in the second row in both the machine direction and a cross direction of the wound pad.

48. Under 35 U.S.C. § 284, by reason of Defendant's infringing activities, Mölnlycke has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

49. Defendant's acts complained of herein have damaged and will continue to damage Mölnlycke irreparably.

50. Mölnlycke has no adequate remedy at law for these wrongs and injuries.

51.     Mölnlycke is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendant's and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '449 patent.

52.     Defendant is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any wound care dressing claimed in the '449 patent, and Defendant's conduct is, in every instance, without Mölnlycke's consent.

53.     On information and belief, Defendant's infringement of the '449 patent has been, and continues to be, willful since at least as early as December 1, 2025, when it had actual notice of the '449 patent and its infringement of the '449 patent.

### THIRD CLAIM FOR RELIEF

### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 12,023,225

54.     Mölnlycke incorporates by reference each and every allegation contained in Paragraphs 1 through 53 as though fully set forth herein.

55.     Mölnlycke owns all right, title, and interest in the '225 patent, which was duly and legally issued to Mölnlycke by the United States Patent and Trademark Office on July 2, 2024.

56.     Attached as Exhibit F to this Complaint is a true and correct copy of the '225 patent.

57.     The '225 patent relates generally to wound care dressings.

58.     The '225 patent is valid and enforceable.

59.     Defendant has infringed and is infringing the '225 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, wound care dressings.

60.     At least the Neo G Opti-Heal® Silicone Multi Purpose Dressing satisfies each and every limitation of at least claim 1 of the '225 patent.

61.     The Neo G Opti-Heal® Silicone Multi Purpose Dressing is a wound pad as recited in Claim 1. Specifically, the Neo G Opti-Heal® Silicone Multi Purpose Dressing is:

1. A wound pad comprising:
a) a liquid retaining layer, and
b) a distributing layer,
wherein the liquid retaining layer, or the distributing layer, or both the liquid retaining layer and the distributing layer comprises fibers and being provided with at least a first and a second discrete group of incisions,
wherein the first and second discrete groups of incisions each comprises a first incision extending from a starting point to a respective end point, and
wherein the first incision extends through the liquid retaining layer, or the distributing layer, or both the liquid retaining layer and the distributing layer.

62.     At least the Neo G Opti-Heal® Silicone Postsurgical Dressing satisfies each and every limitation of at least claim 1 of the '225 patent.

63.     The Neo G Opti-Heal® Silicone Postsurgical Dressing is a wound pad as recited in Claim 1. Specifically, the Neo G Opti-Heal® Silicone Postsurgical Dressing is:

1. A wound pad comprising:
a) a liquid retaining layer, and
b) a distributing layer,
wherein the liquid retaining layer, or the distributing layer, or both the liquid retaining layer and the distributing layer comprises fibers and being provided with at least a first and a second discrete group of incisions,
wherein the first and second discrete groups of incisions each comprises a first incision extending from a starting point to a respective end point, and
wherein the first incision extends through the liquid retaining layer, or the distributing layer, or both the liquid retaining layer and the distributing layer.

64.     Under 35 U.S.C. § 284, by reason of Defendant's infringing activities, Mölnlycke has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

13

65. Defendant's acts complained of herein have damaged and will continue to damage Mölnlycke irreparably.

66. Mölnlycke has no adequate remedy at law for these wrongs and injuries.

67. Mölnlycke is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendant's and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '225 patent.

68. Defendant is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any wound care dressing claimed in the '225 patent, and Defendant's conduct is, in every instance, without Mölnlycke's consent.

69. On information and belief, Defendant's infringement of the '225 patent has been, and continues to be, willful since at least as early as December 1, 2025, when it had actual notice of the '225 patent and its infringement of the '225 patent.

## PRAYER FOR RELIEF

WHEREFORE, Mölnlycke prays for judgment against Defendant as follows:

A. A judgment that Defendant has infringed and is infringing each of the Mölnlycke Patents;

B. A judgment that such infringement is willful;

C. An order, pursuant to 35 U.S.C. § 283, preliminarily and permanently enjoining the Defendant and their subsidiaries, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all persons in active concert or participation with them, from continued infringement of the Mölnlycke Patents;

D. An order, pursuant to 35 U.S.C. § 284, requiring Defendant to pay Mölnlycke its damages caused by Defendant's infringement of the Mölnlycke Patents and that such damages be

adequate to compensate Plaintiff for Defendant's infringement, including for recovery of Mölnlycke's lost profits, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the Court;

E.     An order, pursuant to 35 U.S.C. § 284, requiring Defendant to pay Mölnlycke treble damages as a result of Defendant's willful infringement;

F.     An order declaring this case exceptional pursuant to 35 U.S.C. § 285 and awarding Mölnlycke its reasonable attorneys' fees, litigation expenses and expert witness fees, and costs; and

G.     An order that Mölnlycke have such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury of all issues so triable.


DATED:  March 20, 2026                Respectfully submitted,

By: _/s/ Jonathan B. Morton_

JONATHAN B. MORTON
Florida Bar No.  956872
**K&L Gates, LLP**
200 South Biscayne Boulevard, Suite 3900
Miami, Florida  33131
Telephone: (305) 539-3300
jonathan.morton@klgates.com

JASON A. ENGEL
*(Pro Hac Vice Pending)*
Illinois Bar No. 6274878
jason.engel@klgates.com
NOLAN R. HUBBARD
*(Pro Hac Vice Pending)*
Illinois Bar No. 6294332
nolan.hubbard@klgates.com
DEVDHI KASANA
*(Pro Hac Vice Pending)*
Illinois Bar No. 6349319
devdhi.kasana@klgates.com

**K&L Gates LLP**
70 W. Madison Street, Suite 3100
Chicago, IL  60602
Telephone:  (312) 807-4236

*Attorneys for Plaintiff, Mölnlycke Health Care AB*